UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| M. REZA GHODS | ) | Case No.: 1:05 CV 1956 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | JUDGE SOLOMON OLIVER, JR. |
| | ) | |
| DARDEN RESTAURANTS, INC., | ) | |
| GMRI, INC. and THE OLIVE GARDEN | ) | |
| ITALIAN RESTAURANT | ) | |
| | ) | |
| Defendants | ) | ORDER |

Plaintiff M. Reza Ghods ("Ghods" or "Plaintiff) filed this action against Defendants Darden Restaurants, Inc., GMRI, Inc., and the Olive Garden Italian Restaurant (together, "Olive Garden" or "Defendants"), alleging race, national origin, and religious discrimination under Title VII of the Civil Rights Act of 1964, Ohio Revised Code §§ 4102.02(A) *et seq.,* as well as breach of contract, breach of implied contract, wrongful discharge, and breach of duty to refrain from intentional injury. (*Complt.*, ECF No. 1, Ex. A.) Now pending before the court is Defendants' Motion to Dismiss, or in the Alternative, Stay and Compel Arbitration, ECF No. 4. Defendant contends that Plaintiff is contractually obligated to arbitrate his claims and the case must be dismissed, or stayed pending the outcome of arbitration. For the reasons

stated below, the court agrees, and the Motion to Dismiss is granted.

## I. FACTS

The facts relevant to the motion to dismiss are largely undisputed. Plaintiff was employed at the Olive Garden from March, 1999, through July 12, 2004. When Plaintiff originally applied to work at the Olive Garden, the employment application, signed by Plaintiff, contained the following clause:

> I understand that GMRI, Inc., d/b/a The Olive Garden has in place a Dispute Resolution Procedure, and I further acknowledge and agree that if I am offered and accept employment, any dispute between me and GMRI, Inc., d/b/a The Olive Garden relating to my employment and/or my separation from employment, shall be submitted within one year of the day which I learned of the event and shall be resolved pursuant to the terms and conditions of the Dispute Resolution Procedure.

(ECF No. 4, Aff. Ex. E.) On March 7, 1999, Defendants provided Plaintiff with a copy of a DRP pamphlet, and Plaintiff signed the following acknowledgment:

> I understand that the Olive Garden Dispute Resolution Procedure (DRP) is available to me if I do not agree with a disciplinary or management action taken against me. I agree to submit any eligible disputes I may have to the company's DRP and to abide by the provisions outlined in the process by the Olive Garden's Open Door policy.

(ECF No. 4, Aff. Ex. F.) The DRP pamphlet indicates that "neither the Company nor the Employee may litigate such claims against each other in a court." (ECF No. 4, Aff. Ex. C.) Finally, on March 11, 1999, Plaintiff also signed an acknowledgment that he had received the employee handbook (ECF No. 4, Aff. Ex. G.) The handbook contains the following discussion of Olive Garden's DRP:

> DRP is the *exclusive* way to address and resolve most workplace problems and concerns you may have in a prompt, speedy, and effective manner . . . DRP covers employees' claims for wages or other compensation due (except as herein limited); tort claims; claims of discrimination, including but not limited to race, color, sex, religion, national origin, disability, sexual orientation, material

-2-

> status, or age; claims for denial of benefit; claims for violation of any federal or state law or regulation or any claim arising under common law.

(Empl. Handbook at 25, 26, ECF No. 4, Aff. Ex. D.) While Ghods states in an affidavit that he has "no independent recollection of the Dispute Resolution Procedure," he does not deny signing any of the above acknowledgments, and does not deny receiving the DRP pamphlet or employee handbook. (Ghods Aff. ¶ 2, ECF No. 7, Ex. 2.)

Olive Garden's DRP program contains four steps: (1) Open Door policy; (2) Peer review; (3) Mediation; and (4) Arbitration. (Empl. Handbook at 25, ECF No. 4, Aff. Ex. D.) The first step requires employees to discuss the issue with manager or supervisor. (*Id.* at 26). The peer review process involves presenting the dispute to a panel of two co-workers and one manager, who will reach a decision on the complaint. (*Id.* at 26-27.) If an employee is dissatisfied with the peer review decision, they may take a claim to an administrative agency such as the EEOC, or proceed to mediation and/or arbitration. (*Id.* at 27.) However, "[i]f the matter is returned [from the agency] for resolution directly between the parties (a right to sue letter, for example) it is to be thereafter processed exclusively under DRP, which includes mediation and arbitration to the full extent permitted by law." (DRP Pamphlet at 3, ECF No. 4, Aff. Ex. C.) If the agency returns the dispute for resolution directly between the parties, by issuing a right to sue letter, for example, "The Olive Garden pays all mediation fees if the employee seeks mediation. (Empl. Handbook at 27, ECF No. 4, Aff. Ex. D.) Either the employee or the employer may choose to bypass mediation and go straight to arbitration, the final step in the DRP process. (*Id.* at 28.) Arbitration fees are split equally between employee and employer, with the employees' share not to exceed two weeks salary. (*Id.*) The arbitrator may "grant any remedy or relief that would have been available to you had you brought

your claim in a court of law." (*Id.*) Arbitrators are chosen according to American Arbitration Association ("AAA") guidelines. (*Id.*) The arbitrator's decision is final and binding, and either party may bring suit in court to enforce his decision. (*Id.*)

Plaintiff contends that he was wrongfully discharged on July 12, 2004. (Pl. Complt. ¶¶ 7, 10-12.) Plaintiff originally filed this case on June 30, 2005, in the Court of Common Pleas in Richland County, Ohio. Defendants removed the case to this court on August 9, 2005.

## II. DISMISSAL STANDARD

Rule 12(b)(6) of the Federal Rules of Civil Procedure allows the court to determine the legal sufficiency of a plaintiff's claims. *See Mayer v. Mylod*, 988 F.2d 635, 638 (6th Cir. 1993). Courts reviewing a 12(b)(6) motion must accept the well-pled factual allegations of the complaint as true and construe all reasonable inferences in favor of the plaintiff. *See Miller v. Currie*, 50 F.3d 373, 377 (6th Cir. 1995). However, the court is not required to accept conclusions of law or unwarranted inferences of fact cast in the form of factual allegations. *Blackburn v. Fisk University*, 443 F.2d 121, 123 (6th Cir. 1971). Accordingly, a court must determine "whether the plaintiff undoubtedly can prove no set of facts in support of [his] claim that would entitle [him] to relief" under a viable legal theory advanced in the complaint. *Columbia Natural Resources, Inc. v. Tatum*, 58 F.3d 1101, 1109 (6th Cir. 1995), *cert. denied*, 116 S. Ct. 1041 (1996).

## III. LAW AND ANALYSIS

Defendants' motion to dismiss contends that Plaintiff was contractually obligated to go through the Olive Garden's DRP process, and that this lawsuit must be dismissed, or stayed pending arbitration. Plaintiff challenges whether the arbitration agreement is enforceable. In evaluating whether an arbitration

agreement may be enforced to require a party to arbitrate claims, a court must examine: (1) if the statutory claim is generally subject to compulsory arbitration; (2) whether the parties have entered into a valid arbitration agreement; and (3) whether the statutory claim falls within the scope of that agreement. *Floss v. Ryan's Family Steak House, Inc.*, 211 F.3d 306, 311-12 (6th Cir. 2000).

## A. Claims Generally Subject to Compulsory Arbitration

The court first analyzes whether Plaintiff's claims are generally subject to compulsory arbitration. Under the Federal Arbitration Act, arbitration contracts in which parties agree to submit employment controversies to arbitration are "valid, irrevocable, and enforceable." 9 U.S.C. § 2. The Supreme Court has upheld agreements such as the Olive Garden employment contract, even where the agreement mandates arbitration of statutory claims, holding that:

> [t]he Court has been quite specific in holding that arbitration agreements can be enforced under the FAA without contravening the policies of congressional enactments giving employees specific protection against discrimination prohibited by federal law; as we noted in *Gilmer*, "'by agreeing to arbitrate a statutory claim, a party does not forgo the substantive rights afforded by the statute; it only submits to their resolution in an arbitral, rather than a judicial, forum." 500 U.S. at 26 (quoting *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.,* 473 U.S. 614, 628, 87 L. Ed. 2d 444, 105 S. Ct. 3346 (1985)).

*Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 123 (2001). The only exception to this general rule is if the statute mandates a judicial forum for the cause of action. *Floss v. Ryan's Family Steak House, Inc.*, 211 F.3d 306, 313 (6th Cir. 2000). However, the statutes under which Plaintiff is suing do not specifically require judicial fora. Moreover, the DRP does not waive Plaintiff's statutory right to sue for employment discrimination; rather, it requires that he proceed with such claims through an arbitral process in which the arbitrator may grant any remedy available in a court of law.

Plaintiff's discussion of arbitration agreements and the availability of federal courts is inapposite. Plaintiff cites *McDonald v. City of West Branch, Michigan*, 466 U.S. 284 (1984) and *Alexander v. Gardner-Denver Co.,* 415 U.S. 36 (1974) for the proposition that an employee need not exhaust internal grievance procedures prior to bringing suit on statutory claims. However, *McDonald* and *Gardner-Denver* are not applicable in the instant case, because they did not involve an individual who had agreed to pursue his statutory rights through arbitration. The Supreme Court distinguished *McDonald* and *Gardner-Denver* in *Gilmer v. Interstate/Johnson Lane Corporation*:

> those cases did not involve the issue of the enforceability of an agreement to arbitrate statutory claims. Rather, they involved the quite different issue whether arbitration of contract-based claims precluded subsequent judicial resolution of statutory claims. Since the employees there had not agreed to arbitrate their statutory claims, and the labor arbitrators were not authorized to resolve such claims, the arbitration in those cases understandably was held not to preclude subsequent statutory actions. Second, because the arbitration in those cases occurred in the context of a collective-bargaining agreement, the claimants there were represented by their unions in the arbitration proceedings. An important concern therefore was the tension between collective representation and individual statutory rights, a concern not applicable to the present case. Finally, those cases were not decided under the FAA, which, as discussed above, reflects a "liberal federal policy favoring arbitration agreements." *Mitsubishi*, 473 U.S., at 625, 105 S.Ct., at 3353. Therefore, those cases provide no basis for refusing to enforce Gilmer's agreement to arbitrate his ADEA claim.

500 U.S. 20, 35 (1991); *see also EEOC v. Waffle House, Inc.*, 534 U.S. 279, 295 n.10 (2002); *Willis v. Dean Witter Reynolds, Inc.*, 948 F.2d 305, 312 (6th Cir. 1991). In the instant case, as in *Gilmer*, there was no collective bargaining agreement involved, and the sole issue is whether an individual's agreement to arbitrate specific claims, rather than take them to court, is enforceable. Thus, this court agrees that the *McDonald* / *Gardner-Denver* line of cases are not applicable to the current case. Likewise, the Ohio state law cases Plaintiff cites also deal with collective bargaining agreement provisions

requiring arbitration of contract-based claims, rather than agreements to arbitrate statutory claims, and thus are also inapplicable. *Luginbihl v. Milcor Ltd. P'ship,* 2002 WL 987853 (Ohio Ct. App. May 3, 2002); *In re Singleton Arbitration*, 2001 WL 286715 (Ohio Ct. App. Mar. 23, 2001). The claims asserted by Plaintiff are of the type that may generally be subject to compulsory arbitration.

### B. Valid Arbitration Agreement

Plaintiff contends there is no valid arbitration agreement between the parties because the parties did not have equal bargaining power when they entered into an employment contract. However, Plaintiff does not dispute signing the DRP provisions of the employment contract, and makes no legal argument and cites no case law to support its unequal bargaining power argument. In the absence of any such law or argument, the court concludes that the agreement was valid. Moreover, the Supreme Court specifically rejected Plaintiff's unequal bargaining power argument in *Gilmer v. Interstate/Johnson Lane Corporation*, holding "[m]ere inequality in bargaining power, however, is not a sufficient reason to hold that arbitration agreements are never enforceable in the employment context." 500 U.S. 20, 32-33 (1991). It is well established that a party who has the opportunity to read and understand a written contract, and then signs it, is bound by its terms. *Inland Bulk Transfer Co. v. Cummins Engine Co.*, 332 F.3d 1007, 1016 (6th Cir. 2003). There is no evidence or suggestion that Plaintiff did not have the opportunity to read and understand his employment contract. Therefore, the arbitration agreement was valid and binding.

### C. Plaintiff's Claims Within Scope of Agreement

Plaintiff argues that the arbitration agreement "did not contain a 'clear and unmistakable waiver' of the covered employees' rights to a judicial forum for federal claims of employment discrimination." (Pl.

Opp. Br. 5, ECF No. 7) (citing *Wright v. Universal Maritime Service Corp.*, 525 U.S. 70, 80 (1998). This argument is without merit. First, *Wright* addressed an arbitration agreement contained in a union-negotiated collective bargaining agreement ("CBA"), and held that the "clear and unmistakable waiver" requirement did not apply to an individual's waiver of his own rights, in the absence of a CBA. *Id.* at 80-81. In this case, the arbitration agreement was not contained in any CBA, but was individually signed. Second, even if a "clear and unmistakable waiver" was required, the waiver in the *Wright* case was "very general, providing for arbitration of '[m]atters under dispute.'" *Id.* at 80. In contrast, the waiver in this case was explicit, providing for arbitration for

> claims of discrimination, including but not limited to race, color, sex, religion, national origin, disability, sexual orientation, material status, or age; claims for denial of benefit; claims for violation of any federal or state law or regulation or any claim arising under common law.

(Empl. Handbook at 25, 26, ECF No. 4, Aff. Ex. D.) Plaintiff's claims all arise out of his employment with Defendants, and fall within the scope of claims covered by the DRP. To the extent there is any doubt about whether Plaintiff's claims are covered by the arbitration, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983). Additionally, Defendants' DRP has been examined and upheld by several other courts. *E.g., Wilson v. Darden Restaurants, Inc.*, 2000 WL 150872 (E.D. Pa. Feb. 11, 2000); *Jones v. Darden Restaurants,* CA No. 02-0461 (W.D. La. Nov. 15, 2002). Accordingly, the court holds that the specific terms of the DRP arbitration agreement cover each claim Plaintiff seeks to bring.

**IV. CONCLUSION**

The court thus concludes that the DRP agreement, signed by Plaintiff, is enforceable, and Plaintiff is required to abide by its terms and arbitrate his claims. By signing the DRP agreement, Plaintiff has not forfeited any statutory rights, but has merely agreed to pursue his statutory rights through a specific forum: arbitration. Under the DRP, either party may bring an action in court to enforce the arbitrator's award. However, by virtue of the contract between the parties, this court has no jurisdiction over the dispute between them, until and unless the court is asked to enforce an arbitration award. Accordingly, the court sees no reason to stay the action pending arbitration. Either party may re-file an action seeking enforcement if and when the time comes to do so. Thus, Defendants' Motion to Dismiss (ECF No. 4) is granted.

IT IS SO ORDERED.

/s/ *SOLOMON OLIVER, JR.*
UNITED STATES DISTRICT JUDGE

October 6, 2005